UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------------- X

ALEXANDRA BARBOSA,

                  Plaintiff,                  25-cv-2240

    v.

PASSIAC PUBLIC SCHOOLS; MIGUEL FRIAS, both individually and in his official capacity as an employee of Passaic Public Schools; DR. SANDRA MONTAÑEZ-DIODONET, both individually and in her official capacity as an employee of Passaic Public Schools; AMCO ENTERPRISES, INC; and AMIT THAKKAR, both individually and in his official capacity as an employee of AMCO Enterprises, Inc.

                  Defendants.

**COMPLAINT**

**Jury Trial Demanded**

------------------------------------------------------------------- X

# COMPLAINT

Plaintiff ALEXANDRA BARBOSA ("Ms. Barbosa" or "Plaintiff"), by her attorneys, THE ASHMORE FIRM PLLC, for her Complaint against the PASSAIC PUBLIC SCHOOLS ("PPS"), MIGUEL FRIAS ("Frias"), DR. SANDRA MONTAÑEZ-DIODONET ("PPS Superintendent"), AMCO ENTERPRISES, INC. ("AMCO"), and AMIT THAKKAR ("Thakkar") states as follows:

## PRELIMINARY STATEMENT

1. On April 3, 2024, Ms. Barbosa was sexually harassed and assaulted, twice, by Thakkar while she was employed as a PPS custodian at Passaic Public Schools Theodore Roosevelt School No. 10 ("PPS 10").

2. Thakkar, an employee and/or principal of AMCO – a company holding contracts with PPS worth many millions of dollars – first cornered and sexually assaulted Ms. Barbosa in a

stairwell during the PPS spring break while Ms. Barbosa was working at the public school where she was, and is, employed as a custodian.

3. This sexual harassment and assault occurred when Thakkar visited Ms. Barbosa's school to inspect the work that his employer, AMCO, had been performing at said school, PPS 10.

4. After Ms. Barbosa fought back and resisted Thakkar's assault, and tried to find safety by retreating to the PPS 10 custodian room, Thakkar followed her and assaulted her a second time.

5. When Ms. Barbosa reported Thakkar's assaults to her supervisors and the PPS human resources office, PPS and its employees (i) first denied that any assault occurred, despite video evidence to the contrary; (ii) sought to protect AMCO and Thakkar rather than its own employee, and to focus blame on Ms. Barbosa for her interactions with Thakker; and, (iii) then retaliated and discriminated against Ms. Barbosa after law enforcement obtained video evidence of the sexual assault and brought criminal charges against Thakkar.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367. This case poses federal questions under Title VII of the Civil Rights Act, Title IX of the Education Amendments Act of 1972, the Equal Protection Clause of the Fourteenth Amendment, enforceable under 42 U.S.C. §1983, and it raises supplemental state law claims.

7. Venue is proper in this district because Plaintiff is, and has at all times material, been located in the District of New Jersey.

## PARTIES

8. Ms. Barbosa is, and has been at all times relevant, (i) a resident of Garfield, New Jersey, and (ii) employed by defendant PASSAIC PUBLIC SCHOOLS.

9. Defendant PASSAIC PUBLIC SCHOOLS, and its Board of Education, is a school district and board of education with the principal business address of 663 Main Avenue, Passaic, New Jersey, 07005.  PPS employed Plaintiff during all relevant times herein.

10. Defendant MIGUEL FRIAS is, and was at all times relevant, employed by PPS as its Director of Human Resources, he had supervisory authority over Plaintiff, and he engaged in the retaliation against and discrimination of Plaintiff.

11. Defendant DR. SANDRA MONTAÑEZ-DIODONET is, and was at all times relevant, employed by PPS as its Superintendent, she had supervisory authority over Plaintiff, and she engaged in the retaliation against and discrimination of Plaintiff.

12. Defendant AMCO ENTERPRISES, INC. is a corporation with its principal address at 600 Swenson Drive, Kenilworth, New Jersey, 07033.  Upon information and belief, AMCO benefits from contracts worth many millions of dollars to perform construction services at PPS schools, including PPS 10.

13. Defendant AMIT THAKKAR is, and was at all times relevant, an employee and/or principal of AMCO Enterprises, Inc.  His present address is unknown.

## FACTUAL BACKGROUND

14. In November 2022, Ms. Barbosa began her employment with PPS as an Assistant Custodian.  From November 2022 until April 2024, Ms. Barbosa received glowing performance reviews, and she was repeatedly commended by parents, colleagues, teachers and administrators at the PPS schools to which she was assigned for her work as a custodian.

15. On April 3, 2024, Ms. Barbosa was sexually harassed and assaulted twice during her employment at PPS 10 ("the Assaults").

16. On that day, PPS was on spring break, however custodians, like Ms. Barbosa, were working, and contractors, like AMCO, were performing repairs at PPS schools – using the absence of students and teaching staff to perform contractual repairs.

17. On that day, AMCO was installing a new HVAC system at PPS 10. In the course of his employment, THAKKAR visited PPS 10 on April 3 to inspect and take pictures of the work AMCO had been performing for the PPS.

18. Ms. Barbosa was directed by the PPS 10 head custodian to escort Thakkar through PPS 10 to enable his inspection of the work AMCO had been performing.

19. While escorting Thakkar, and after his inspection had been performed, in the stairwell landing by the west side exit doors of PPS 10, Thakkar shook Ms. Barbosa's hand and then pulled her in to hug her, without her consent, whereupon he began groping and rubbing her breasts.

20. Terrified and shocked at this sexual harassment and assault, Ms. Barbosa pushed Thakkar away and told him never to do that again, and to leave, and then she attempted to retreat to the safety of the basement custodian room in PPS 10.

21. However, Thakkar persisted in his sexual harassment and assault of Ms. Barbosa, by following her down the stairs towards the basement custodian room.

22. Before Ms. Barbosa could reach the custodian room, Thakkar began apologizing for his assault just moments earlier, but then continued in his sexual harassment of Ms. Barbosa by asking if he could "make it up" to her by taking her to dinner as he followed Ms. Barbosa down the stairs.

23. Still badly shaken from the initial sexual assault, and very fearful of Thakkar, Ms. Barbosa stopped, declined Thakkar's dinner invitation, upon which Thakkar again grabbed and hugged Ms. Barbosa, without her consent, and then proceeded to begin groping Ms. Barbosa's breasts again.

24. After fighting off this second assault, Ms. Barbosa hastily entered the custodian room and waited until she heard the door click, reflecting that Thakkar had left the building.

25. A few minutes later, seeing that Thakkar's vehicle was no longer parked in the school parking lot, Ms. Barbosa hastily existed to the safety of her own car. Upon reaching her car, shaking and trembling, she broke down crying in her car. Thereafter, Ms. Barbosa unsuccessfully tried to text-message and call the vice principal of PPS 10 ("VP"), asking that the VP call her.

26. Upon information and belief, the PPS 10 VP and principal were out of town, on vacation, during the PPS April 2024 spring break.

27. Ms. Barbosa was unable to report the Assaults to PPS and PPS 10 administrators during the April 2024 spring break because of their absences from facilities, despite her diligent attempts at contacting them, including emailing Defendant DR. SANDRA MONTAÑEZ-DIODONET.

28. As a consequence of the Assaults, and because she could not contact any PPS administrators – and despite her fear of further assaults as AMCO staff remained working onsite at PPS 10 during the remainder of the April 2024 spring break – Ms. Barbosa continued to work at PPS 10 during the remaining days of spring break, on April 4-5, 2024, afraid to take off work.

29. On April 8, 2024, when PPS 10 administrators returned to work (after the April 2024 spring break ended), Ms. Barbosa reported to them the April 3rd sexual assaults she had suffered at the hands of Thakker.

30. Upon information and belief, when Ms. Barbosa reported these sexual assaults on April 8, a Passaic Police Department ("PPD") officer assigned to PPS 10 as a School Resource Officer ("SRO"): (i) participated in the PPS interview of Ms. Barbosa concerning her report, (ii) reviewed the available video evidence from April 3, (iii) observed, at least, the sexual assault of Ms. Barbosa

described *supra* at ¶19, and (iv), unbeknownst to PPS administrators, independently referred this matter to the Passaic Police Department detective bureau.

31. When the SRO reviewed PPS video evidence and referred the matter to the PPD detective bureau, the PPD "Investigation Report" about the Assaults states the following:

> "I assisted school security staff in locating the incident on the surveillance footage, which *displays Mr. Tha[k]ker hug Ms. Barbosa and with his open right hand, cupped her left breast and moving it in a circular motion caressed her left breast with an open hand.*" (*emphasis* added).

32. After Ms. Barbosa made her report on April 8, PPS administrators first directed Ms. Barbosa to make a report of the incident to human resources in writing, which she did.

33. On April 9, 2024, Ms. Barbosa was examined by her doctors at West Hudson Medical Group, who provided her with a written notice advising that she was under the care of doctors, and able to fully resume work as of May 1, 2024 without restrictions (the "April 9 Doctor's Note").

34. On April 9, 2024, Ms. Barbosa was interviewed by Frias about the Assaults.

35. During that April 9 interview, Ms. Barbosa, accompanied by her union representative Trent Johnson – and where Elizabeth Perez, PPS Coordinator of Human Resources was also present – Ms. Barbosa relayed the circumstances surrounding the Assaults, and *inter alia*, how she was in disbelief, disgusted and felt like she was experiencing an out-of-body incident during the Assaults, after which she "lost it" upon reaching the safety of her car, described *supra* at ¶¶16-25.

36. During that April 9 interview Ms. Barbosa provided Frias with the April 9 Doctor's Note providing a return-to-work date of May 1, 2024.

37. On April 10, Frias emailed and mailed Ms. Barbosa a letter summarizing the April 9 interview and stating, in relevant part, the following:

> ➢ "The District immediately investigated the incident, reviewed the video and contacted Mr. Amit. Mr. Amit denied any appropriate conduct *and the video only showed a hug*." (*emphasis* added).

> ➢ "Nevertheless, please be advised that the District has prohibited Mr. Amit from appearing at School No. 10 and he is to send another representative to handle any issues at School No. 10."

> ➢ "Please be advised that although you did not report to work for most of the day on April 9, 2024, and April 10, 2024, the District will not deduct any absences. In fact the District will adhere to your doctor's recommendation, and you will be placed on leave until April 15, 2024."

38.  Notwithstanding the foregoing, on April 11, 2024, PPS mailed Ms. Barbosa a letter signed by Edward Melo, PPS "Interim Coordinator of Facilities," advising (i) that "[t]his letter serves to memorialize your attendance from July 1, 2023 through April 11, 2024," (ii) repeating therein the PPS policy on attendance patterns, with the threat that "consistent absenteeism or tardiness is unacceptable and subject to disciplinary action" and (iii) warning Ms. Barbosa that "[e]xcessive absences have a negative impact on the consistency of quality in the department. *Please be advised that excessive absences can also lead to further disciplinary actions*." (*emphasis* added).

39.  On April 11, and by PPS's own attendance records during that period, as reflected in this letter, Ms. Barbosa was not on track to exceed her annual leave award, nor did she have a single reported tardy day.

40.  As a result of the PPS defendants' actions in (i) falsely telling Ms. Barbosa that no evidence existed on videotape of the assault she suffered and described in detail to them (*cf.* ¶¶30-31, 37) and (ii) immediately beginning their retaliation against Ms. Barbosa by baselessly complaining about and threatening her with attendance records just one day after telling her that her

7

absences were excused (see *supra* ¶¶36-38), the harms, trauma and suffering Ms. Barbosa experienced from the Assaults at her work place were substantially magnified.

41. On April 15, 2024, Frias emailed and mailed Ms. Barbosa a letter stating the following:

   ➢ "Further to our letter sent on April 10, 2024, when you informed the District that Mr. Amit, a contractor for the District, made inappropriate contact with you, the District has now discovered new evidence in this matter."

   ➢ In our previous letter, we explained that the District immediately investigated the incident, reviewed the video, and contacted Mr. Amit. Please be advised that after additional investigation, we have reiterated to Mr. Amit that he is prohibited from entering any District properties.

   ➢ The District appreciates that you reported this matter. We want to assure you that your safety and well-being are our utmost priority. Should you require any further support or have any questions or concerns, please do not hesitate to reach out to me directly.

42. Significantly, on April 15 and thereafter, PPS did not advise Ms. Barbosa what the "new evidence" the "District has now discovered" was, nor -- *to date* -- has PPS ever advised Ms. Barbosa that, in fact, video evidence does exist reflecting the sexual Assaults she suffered at the hands of Thakker. To wit, PPS has declined to provide Ms. Barbosa or her representatives with copies of said video evidence. The only information communicated to Ms. Barbosa from PPS is that there was no evidence that she was sexually assaulted, and only that she was hugged, *supra* at ¶37 – **despite that the PPS SRO reported immediately viewing video evidence describing the Assaults exactly as Ms. Barbosa had reported them**, *supra* at ¶31.

43. On April 24, 2024, Ms. Barbosa first learned of the existence of (i) the PPD Investigation Report described *supra* at ¶¶30-31, and (ii) that video evidence of the Assault did exist and had been reviewed by PPS and its staff (upon obtaining the Investigation Report), only after she received correspondence from the Passaic County Prosecutor's Office, advising her that

"[t]he Office of Victim Witness Advocacy has been notified that you have been a victim of a crime."

44. On April 24, 2024, Frias began trying to contact Ms. Barbosa, by calling her from his personal cell phone.

45. On April 24, 2024, Ms. Barbosa received an evaluation by the Principal of PPS 10, wherein she was rated in the highest performance metric ("Satisfactory") in every category, was "recommended for reappointment," had zero tardy days reflected and only 15.75 days absent, with the following handwritten comments: "Ms. Barbosa is hardworking. She cares about the cleanliness of the school. She's involved in school activities and helps out any chance she gets. She's the consummate professional."  [Notwithstanding the April 24, 2024 date of this evaluation, the evaluator and Ms. Barbosa signatures on evaluation are both dated May 28, 2024].

46. On April 26, 2024, Frias again called Ms. Barbosa from his cell phone and then subsequently text-messaged her stating "please call me."

47. On May 31, 2024, PPS continued in its retaliation against Ms. Barbosa by inexplicably transferring her to a new school, further from her home, *and* then started changing her custodial shifts from the 6 a.m. – 3 p.m. shifts she had been working since her 2022 appointment.

48. Upon information and belief, and despite PPS and Frias's statements, *supra* at ¶¶ 36, 40 advising that Thakkar was barred from PPS facilities, including the school to which PPS assigns Ms. Barbosa, PPS has continued to permit Thakkar to visit PPS schools and buildings to supervise ongoing AMCO work performed at PPS schools.  PPS has instead transferred and moved Ms. Barbosa around various schools on Harrison Street to keep her away from Thakker, rather than barring Thakker from all PPS premises as they previously committed to doing, to protect Ms. Barbosa.  Accordingly, Ms. Barbosa has suffered the additional indignity, humiliation and fear of

seeing Thakker on school grounds after PPS advised her that he was no longer permitted on any properties.

49. As a result of Thakker's sexual harassment and assaults described *supra*, and the retaliation and discrimination lodged against Ms. Barbosa for having reported her sexual harassment and assaults, she has suffered severe mental and emotional distress, including anxiety, depression, a sleep disorder, and post-traumatic stress disorder ("PTSD").

50. Because PPS did nothing to protect Ms. Barbosa against physical and sexual harassment or make any meaningful changes after Ms. Barbosa reported the incident, she suffers from heightened stress, PTSD, and anxiety when she is at work – and in connection with her employment – because she is constantly fearful of being harassed and assaulted again.

51. Because PPS denied that Ms. Barbosa was even assaulted – despite possessing and viewing and referring the Assaults to the PPD – the harms she has suffered, described *supra*, have even been further magnified.

52. Because PPS set about threatening and retaliating against Ms. Barbosa, *supra*, immediately after she reported the foregoing described sexual harassment and assault, the harms she has suffered have been even further worsened.

53. Moreover, this wanton act of sexual assault has impacted Ms. Barbosa's personal and familial relationships, and consequently caused severe emotional distress, including as she has had to explain what occurred to her that has caused her emotional state and absences from work as a custodian, and the attendant economic impacts from the loss of income.

54. Since the Assaults, Ms. Barbosa has received continuous, routine psychotherapy, and is on medication as a result of the severe psychological and emotional injuries that this has caused her.

# FIRST CAUSE OF ACTION

**Violations of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681** *et seq.*

*Against the PPS Defendants*[1]

55. All prior paragraphs are incorporated in this claim, as if fully set forth herein.

56. Title IX of the Education Amendments Act of 1972 states, "No person in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance."

57. At all times material here, defendant PPS was and is a public educational institution, program and activity, and was and is conducting education programs and activities, receiving Federal financial assistance.

58. By the above-described conduct, Ms. Barbosa was discriminated against on the basis of her sex, including but not limited to by sexual harassment and sexual assaults, and discrimination by Defendants PASSAIC PUBLIC SCHOOLS, MIGUEL FRIAS, and DR. SANDRA MONTAÑEZ-DIODONET (collectively, the "PPS Defendants").

59. By the above-described conduct, the PPS Defendants were on notice of the discriminatory conduct engaged in by PPS staff. These defendants failed to carry out their duties and obligations pursuant to Title IX to investigate, and take corrective and remedial action.

60. By the above-described conduct, the PPS Defendants allowed and fostered an educational environment in which discriminatory and harassing practices that were, and continue to be, sufficiently severe or pervasive to create an environment that is both subjectively and objectively hostile, abusive and retaliatory.

---

[1] See ¶58, *infra*.

61. By the above-described conduct, the PPS Defendants tolerated, condoned, ratified and/or engaged in the sexually abusive educational environment, or, in the alternative, knew, or should have known, of its existence, yet failed to conduct proper investigations and failed to take remedial action.

62. By reason of the continuous and ongoing nature of the above-described sexual assault, sexual abuse, sexual harassment and sexual discrimination conduct, Ms. Barbosa is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein. As a direct and proximate result of the PPS Defendants' unlawful actions or inactions, Ms. Barbosa has suffered, and will continue to suffer, harm, including, but not limited to, loss of future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish and other economic damages and non-economic damages.

63. Ms. Barbosa is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs and other appropriate relief.

## SECOND CAUSE OF ACTION

**Retaliation in Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq*.**

*Against the PPS Defendants*

64. All prior paragraphs are incorporated in this claim, as if fully set forth herein.

65. By the above-described conduct, the PPS Defendants' have retaliated against Ms. Barbosa in violation of Title IX by, *inter alia*, failing to properly investigate her claims of discrimination, sexual harassment and sexual assault, and by instigating retaliatory practices against Ms. Barbosa.

66. By the above-described conduct, the PPS Defendants took adverse employment actions against Ms. Barbosa in response to her lawful actions in reporting the Assaults.

67. By the above-described conduct, the PPS Defendants were on notice of their discriminatory actions but failed to take corrective action.

68. By the above-described conduct, the PPS Defendants were deliberately indifferent to Ms. Barbosa's rights to due process and to be free from sex discrimination, harassment and assault.

69. By reason of the continuing and ongoing nature of the above-described conduct, Ms. Barbosa is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

70. As a direct and proximate result of the PPS Defendants' unlawful conduct in violation of Title IX, Ms. Barbosa has suffered, and continues to suffer, harm for which she is entitled to an award of damages to the greatest extent permitted by law, including but not limited to monetary and/or economic harm, for which she is entitled to an award of monetary damages.

71. As a direct and proximate result of the PPS Defendants' unlawful conduct in violation of Title IX, Ms. Barbosa has suffered, and continues to suffer, harm, including, but not limited to, loss of future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish and other economic damages and non-economic damages.

72. Ms. Barbosa is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs and other appropriate relief.

### THIRD CAUSE OF ACTION

**Violations of the Equal Protection Clause of the Fourteenth Amendment, enforceable under 42 U.S.C. §1983**

*Against the PPS Defendants*

73. All prior paragraphs are incorporated in this claim, as if fully set forth herein.

74. The Fourteenth Amendment to the United States Constitution, enforceable through 42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

75. Under the Equal Protection Clause, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

76. By the above described conduct, the PPS Defendants' conduct endangered Ms. Barbosa's safety, bodily integrity, privacy, security and well-being, and deprived Plaintiff of her right to equal dignity, liberty and equal protection of the laws.

77. By the above described conduct, the PPS Defendants, acting under color of state law, deprived Plaintiffs of their constitutional rights to an educational and public school workplace environment free from sexual discrimination.

78. The PPS Defendants' conduct was intentional, malicious or deliberately indifferent to the Plaintiff's constitutional rights.

79. As a direct and proximate result of the PPS Defendants' conduct, Ms. Barbosa has suffered, and continues to suffer, harm for which she is entitled to recover damages, including compensatory damages, attorneys' fees and costs, punitive damages and injunctive or declaratory relief.

## FOURTH CAUSE OF ACTION

### Gender Discrimination and Retaliation in Violation of Title VII

*Against the PPS Defendants*

80. All prior paragraphs are incorporated in this claim, as if fully set forth herein.

81. Any and all prerequisites to the filing of this suit, and Fourth Cause of Action have been met.

82. By the above-described conduct, the PPS Defendants subjected Ms. Barbosa to discrimination on the basis of her gender, in violation of Title VII.

83. By the above-described conduct, the PPS Defendants retaliated against Ms. Barbosa unlawfully in retaliation for having reported the Assaults.

84. The stated reasons for the PPS Defendants' investigation into Ms. Barbosa's complaint respecting the Assaults, her warnings respecting attendance, and transfer to another school were not the true reasons, but instead were pretext to conceal the PPS Defendants' discriminatory and retaliatory animus.

85. As a direct and proximate result of the PPS Defendants' conduct, Ms. Barbosa has suffered, and continues to suffer, harm for which she is entitled to recover damages, including compensatory damages, attorneys' fees and costs, punitive damages and injunctive or declaratory relief.

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

*Against the PPS Defendants*

86. All prior paragraphs are incorporated in this claim, as if fully set forth herein.

87. By the above-described conduct, the PPS Defendants violated the covenant of good faith and fair dealing implied in all contracts in the State of New Jersey.

88. As a direct and proximate result of the PPS Defendants' breaches of the covenant of good faith and fair dealing implied in all contracts, Ms. Barbosa suffered harms for which she is entitled to damages.

## SIXTH CAUSE OF ACTION

### New Jersey Law Against Discrimination

### Hostile Work Environment & Sexual Harassment

### *Against the PPS Defendants*

89. All prior paragraphs are incorporated in this claim, as if fully set forth herein.

90. Any and all prerequisites to the filing of this suit, and Sixth Cause of Action have been met.

91. Pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("LAD"), the PPS Defendants are liable for the acts constituting hostile work environment, and sexual harassment, created by the PPS Defendants' employees, managers and/or supervisors.

92. By the above-described conduct, the PPS Defendants created and perpetuated a severe and pervasive work environment based on the egregious Assaults involving Defendant Thakkar, wherein Ms. Barbosa was subjected to repeated and unwanted sexual advances, commentary, harassment and physical assault during the course of her employment.

93. The PPS defendants failed to implement any preventative or remedial measures to protect against unlawful harassment and discrimination, including but not limited to:

   a. failure to institute or implement effective policies and/or procedures regarding gender and sexual harassment, and the reporting and investigation of the same, and the prevention of the same;

b. failure to adequately monitor or supervise the illegal activities and discriminatory actions of supervisory personnel and contractors hired by PPS and present at its facilities;

c. failure to adequately monitor or supervise the illegal activities, retaliation, and discriminatory actions of supervisory personnel;

d. failure to adequately monitor or supervise the illegal activities of contractors employed by PPS and present at its facilities;

e. failure to adequately rectify, discipline or prevent known illegal, retaliatory, or discriminatory activities by supervisory personnel;

f. failure to adequately rectify, discipline or prevent known illegal, retaliatory, or discriminatory activities by contractors employed by PPS and present at its facilities;

g. failure to provide adequate training to recognize, address, rectify, and/or prevent illegal, retaliatory, or discriminatory conduct.

94. The conduct engaged by the PPS Defendants constitutes egregious behavior and willful indifference by PPS management and administrators to the rights of Ms. Barbosa, sufficient to subject the PPS Defendants to punitive damages under the LAD and *Lehman v. Toys 'R' Us.*

95. Ms. Barbosa has been severely injured as a result of such harassment, retaliation and discrimination that she has suffered, and continues to suffer, severe emotional distress, PTSD, humiliation, embarrassment, anguish, physical and bodily injuries, personal hardship, career and social disruption, psychological and emotional harm, economic losses, and other such damages.

## EIGHTH CAUSE OF ACTION

### Aiding and Abetting Liability

### *Against the PPS Defendants and AMCO*

96. All prior paragraphs are incorporated in this claim as if fully set forth herein.

97. The AMCO and PPS Defendants, by their actions and inactions, condoned – and continue to condone – and ratified and aided and abetted the sexual harassment, hostile work environment and/or assault and battery perpetrated against Ms. Barbosa. These Defendants knew or should have known that sexual harassment and/or discrimination and/or retaliation was occurring, and had knowledge that such harassment and/or discrimination and/or retaliation was a violation of the law, and yet failed to provide sufficient safeguards and/or adequate training to prevent the same in the workplace, and they failed to prevent Plaintiff from being subjected to a hostile work environment.

98. These Defendants had knowledge that the above-described conduct was occurring, had knowledge that it was a violation of the law, and substantially encouraged and/or assisted in the same.

99. These Defendants are liable under the LAD for aiding and abetting a hostile work environment and/or assault and battery in violation of the LAD.

100. The conduct engaged in by these Defendants constitutes egregious behavior and/or willful indifference by upper management to the rights of Ms. Barbosa sufficient to subject these Defendants to punitive damages under the LAD.

101. Ms. Barbosa has been severely injured as the result of such tortious conduct and has suffered, and continues to suffer, severe emotional distress, PTSD, humiliation, embarrassment,

anguish, personal hardship, career and social disruption, psychological and emotional harm, and other such damages.

## NINTH CAUSE OF ACTION

### Assault and Battery

### Against All Defendants

102. All prior paragraphs are incorporated in this claim as if fully set forth herein.

103. While working for Defendant PPS, Ms. Barbosa was physically assaulted by Defendant Thakkar, an employee and/or principal of Defendant AMCO, and an agent and contractor of Defendant PPS.

104. Defendant Thakkar intended to cause harmful or offensive physical conduct, and Ms. Barbosa was put in imminent apprehension of such conduct.

105. This conduct constituted a harmful and offensive contact with Ms. Barbosa resulting from an act intended to cause Ms. Barbosa to suffer the contact.

106. Ms. Barbosa has been severely injured as the result of such tortious conduct and has suffered, and continues to suffer, severe emotional distress, PTSD, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, and other such damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, both individually for the named defendants in their official capacities as employees with PPS and AMCO, jointly and severally, for the harm suffered as follows:

A. Compensatory Damages;

B. Consequential Damages;

C. Punitive Damages;

D. Prejudgment interest;

F. Attorneys' fees and costs with appropriate enhancement under *Rendine v. Pantzer*, 141 N.J. 292 (1995); and

G. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 2, 2025

Respectfully submitted,

THE ASHMORE FIRM

/s/ Benjamin J. Ashmore Sr.
Benjamin J. Ashmore Sr., Esq.
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone: (800) 955-0629
Facsimile: (212) 656-1375
Cell: (917) 750-9212
ben.ashmore.sr@ashmore.law

*Attorneys for Defendant*